[Cite as *State v. Wood*, 2024-Ohio-4925.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 29887 |
| | : | |
| v. | : | Trial Court Case No. 22-TRD-3833 |
| | : | |
| ALICE WOOD | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 11, 2024

. . . . . . . . . . .

ANDREW S. POLLIS & MELISSA A. GHRIST, Attorneys for Appellant

ASHLEY THOMAS, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Defendant-Appellant Alice Wood appeals from her conviction for reckless operation of a vehicle. Specifically, she challenges the trial court's order of restitution,

arguing that the amount of restitution ordered did not bear a reasonable relationship to the actual loss suffered, because the State failed to present evidence regarding the market value of the vehicle immediately before the collision. For the following reasons, we affirm the judgment of the trial court.

## I. Background Facts and Procedural History

{¶ 2} In January 2022, Brian Klein was driving Angela Skinner's vehicle and was hit in the front bumper by another driver. On May 8, 2022, Skinner was driving the same vehicle with Klein as a passenger and, while stopped at a traffic light, Wood hit the rear end of Skinner's vehicle. After the collision, Wood got out of her car, spoke with Skinner (who allegedly agreed that there was no damage to the rear bumper), and then left the scene without notifying the police.

{¶ 3} Shortly thereafter, Skinner contacted the Dayton Police Department and reported the incident. On July 8, 2022, Wood was charged with one count of failure to stop after an accident on public roads in violation of R.C. 4549.02 and one count of failure to maintain assured clear distance ahead in violation of R.C. 4511.21(A). Wood later pleaded guilty to a reduced charge of reckless operation of a motor vehicle in violation of R.C. 4511.20.

{¶ 4} On June 20, 2023, the trial court held a restitution hearing at which Skinner, Klein, and Wood testified. At the hearing, it was undisputed that Skinner's vehicle had pre-existing damage on the front driver's side from the January 2022 collision. Neither the State nor Wood presented evidence regarding the market value of Skinner's vehicle immediately before or after the May 2022 collision, but Skinner testified that she had paid

$5,000 for the vehicle when she purchased it approximately four years earlier.

{¶ 5} The State offered into evidence an auto-repair estimate from Beau Townsend Collision Center. The estimate included the cost of fixing the pre-existing damage from the January 2022 accident and the damage from the collision involving Wood, totaling $6,656.22. The total estimate to repair the vehicle exceeded the $5,000 that Skinner had paid for the car. The State argued that the restitution cap was $5,000 and then requested $5,000 to fix the vehicle.

{¶ 6} Although the portion of the estimate involving the front of the car was not taken into account, the trial court considered certain aspects of the estimate related to the vehicle's rear end and ordered Wood to pay $1,865.76 in restitution to Skinner for damage to the vehicle, which included the truck lid ($831.11), the right and left rear lamps ($251.65 each), and the rear bumper cover ($531.78). We note that the actual total to repair the rear end damage according to the estimate was $1,866.19, not $1,865.76.

{¶ 7}  Wood appeals.

## II.    Assignment of Error

{¶ 8} Wood sets forth the following sole assignment of error:

THE TRIAL COURT ERRED BY ORDERING MS. WOOD TO PAY RESTITUTION BECAUSE THE CITY FAILED TO PRESENT EVIDENCE OF THE VALUE OF MS. SKINNER'S CAR BEFORE THE ACCIDENT FROM WHICH TO DETERMINE WHETHER REPAIR COSTS WERE EXCESSIVE.

{¶ 9} R.C. 2929.28 governs financial sanctions for misdemeanor offenses and

allows a court to impose sanctions on a criminal offender, including restitution by the offender to the victim. R.C. 2929.28(A)(1) provides, in part:

> The court shall determine the amount of restitution to be paid by the offender. The victim, victim's representative, victim's attorney, if applicable, the prosecutor or the prosecutor's designee, and the offender may provide information relevant to the determination of the amount of restitution. *The amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense . . .* If the court decides to or is required to impose restitution, the court shall hold an evidentiary hearing on restitution if the offender, victim, victim's representative, victim's attorney, if applicable, or victim's estate disputes the amount of restitution. The court shall determine the amount of full restitution by a preponderance of the evidence.

{¶ 10} "R.C. 2929.28(A)(1) grants broad discretion to the trial court to 'base the amount of restitution it orders' on new information presented at the restitution hearing, which can be from the victim, the offender, a presentence investigation report, estimates, receipts, or 'any other information.' " *State v. Williams*, 2017-Ohio-125, ¶ 13 (2d Dist.), quoting *State v. Olson,* 2013-Ohio-4403, ¶ 8 (2d Dist.). The amount of restitution "must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted." *State v. Caldwell*, 2023-Ohio-355, ¶ 16 (4th Dist.), quoting *State v. Warner*, 55 Ohio St.3d 31, 69 (1990). "The State bears the burden of establishing the restitution amount." *State v. Moore*, 2023-Ohio-3318, ¶ 11 (1st Dist.), citing *Caldwell*

at ¶ 16.

{¶ 11} "[W]e generally review a trial court's order of restitution under an abuse of discretion standard; an abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable." *State v. Wilson*, 2015-Ohio-3167, ¶ 11, citing *State v. Naylor,* 2011-Ohio-960, ¶ 22 (2d Dist.); *State v. Johnson,* 2012-Ohio-1230, ¶ 11 (2d Dist.). A trial court abuses its discretion "when it orders restitution that does not bear a reasonable relationship to the actual financial loss suffered" and "if the award of restitution is not supported by competent, credible evidence in the record from which the court can discern the amount of restitution to a reasonable degree of certainty." *Williams* at ¶ 14*,* citing *Johnson* at ¶ 11; *Olson* at ¶ 33.

{¶ 12} In her assignment of error, Wood contends that the State's burden in establishing the restitution amount included producing evidence sufficient to prove the market value of Skinner's vehicle immediately before the May 2022 accident with Wood. She asserts that, because the State failed to produce such evidence, the trial court erred in ordering Wood to pay restitution at all.

{¶ 13} Wood relies on *Falter v. City of Toledo*, 169 Ohio St. 238 (1959), in support of her argument. In *Falter*, the plaintiffs, Falter and Allstate Insurance Company, sought to recover damages resulting from a collision between Falter's automobile and a truck owned by the City of Toledo and driven by a city employee. *Id.* The plaintiffs' complaint included an allegation that "the reasonable cost of the labor and material necessary to repair said automobile was the sum of one hundred seventyeight [sic] and 74/100 dollars ($178.74) which amount also represents the depreciation in the reasonable value of said

automobile as a result of said collision." *Id.* at 239. The defendants sought to strike this allegation, arguing that the plaintiffs should not have pleaded the cost of repairs but, rather, should have alleged only the difference in the reasonable market value of the motor vehicle both immediately before and after the actionable collision. *Id.*

{¶ 14} *Falter* concluded that the owner of a damaged motor vehicle may recover the difference between its market value immediately before and immediately after the collision. *Id.* at 240. The court also held, however, that it was not prejudicial error for the owner of such a vehicle to allege, prove, and recover the reasonable cost of repairs provided that such recovery *did not exceed the difference between the market value of the vehicle immediately before and after the collision. Id.* In support of its conclusion, *Falter* quoted the following from *Gass v. Agate Ice Cream*, 264 N.Y. 141, 143-44 (1934):

> The damages sustained by an automobile in a collision may be established by showing the reasonable cost of the repairs necessary to restore it to its former condition, although the general rule is that the measure of damages to personal property is the difference between its market value immediately before and immediately after the injury. This rule is subject to the limitation . . . that the cost of repairs must be less than the diminution in market value due to the injury . . . The plaintiff should not benefit by the loss . . . Where the automobile is totally destroyed, the measure of damages is its reasonable market value immediately before destruction. There can be no recovery beyond such value for mere repairs.

*Id.*

**{¶ 15}** Wood also cites *State v. Moore*, 2023-Ohio-3318 (1st Dist.). In *Moore*, the victim was required to purchase a new vehicle after a collision, and the trial court awarded a restitution amount that was based on the cost of the replacement vehicle. In reversing the trial court's award, *Moore* recognized that, while the damage to a vehicle may be determined by estimates setting forth the cost of repair, when the cost to repair the vehicle exceeds its value (as when the vehicle is a "total loss"), "then the owner's damages are limited to the value of the vehicle immediately prior to the accident." *Moore* at ¶ 12, quoting *Caldwell* at ¶ 22.

**{¶ 16}** The issue in this case concerns whether the trial court erred in ordering restitution without considering the market value of Skinner's vehicle immediately before and after the accident with Wood. Wood points out that Skinner purchased the vehicle four years prior for $5,000 and that the vehicle had already been damaged from the January 2022 accident before the incident with Wood, suggesting (1) that the total repair estimate of $6,656.22 far exceeded the market value of the vehicle immediately before and after the May 2022 accident and (2) that the trial court's order for restitution in the amount of $1,865.76 for rear end repairs also likely exceeded the vehicle's market value before and after the latter accident. According to Wood, the record is devoid of any market-value evidence from which to determine whether the cost of repairs necessitated by the May 2022 collision exceeded the difference between the market value of the vehicle immediately before and after the accident. Thus, in relying on the reasoning in *Falter* and *Moore*, Wood contends that, without evidence of market value at the relevant times, the estimate of the repair costs was not an appropriate way to establish economic

loss.

{¶ 17} At the outset, we note that, when the cost to repair the vehicle exceeds its market value, the recoverable damage is the vehicle's market value immediately prior to the accident. *Caldwell*, 2023-Ohio-355, at ¶ 22 (4th Dist.), citing *Falter, 169 Ohio St. 238.* Alternatively, when the vehicle's damage does not exceed its market value, the owner of the damaged vehicle may recover either the difference between its market value immediately before and immediately after the collision or the reasonable cost of repairs, provided that the cost of repairs does not exceed the difference between the market value of the vehicle immediately before and after the collision. *Falter* at 240. There is no evidence in this case that the damage to Skinner's vehicle from the collision with Wood exceeded its market value and, thus, based on the foregoing, the calculation of Skinner's restitution was based on the latter calculation.

{¶ 18} We recognize that there was no evidence presented at the restitution hearing regarding the market value of Skinner's vehicle immediately before and after the subject collision and that the only evidence offered regarding the market value of Skinner's vehicle was the $5,000 purchase price of the vehicle four years prior. We also recognize that the State bore the burden of establishing the restitution amount. Wood, however, suggests that it was not only the State's burden to produce evidence of the reasonable cost of repairs but also to produce the market value evidence of Skinner's vehicle immediately before and after the May 2022 accident, and that, by failing to produce such evidence, the trial court erred in ordering Wood to pay restitution at all. It is in this respect that we disagree with Wood and find *State v. Gordon*, 2018-Ohio-3786 (1st

Dist.) to be instructive on the matter.

{¶ 19} In *Gordon*, the victim testified at the restitution hearing that Gordon, the offender, keyed deep scratches into her car's exterior. *Id.* at ¶ 3. The victim took her car to three body shops and offered repair estimates in the amounts of $5,350, $5,448, and $6,894 at the hearing. *Id.* In response, Gordon submitted a Kelley Blue Book website printout that indicated a $3,290 trade-in value for the same model of car, with a trade-in-value range of $2,593 to $3,986. *Id.* Without considering Gordon's estimated trade-in-values, the trial court averaged the victim's three repair estimates and ordered restitution in the amount of $5,897. *Id.* In ordering restitution, the trial court noted that the victim had obtained estimates from three body shops and stated that there was no reason for the court to doubt the credibility of the estimates. *Id.* at ¶ 7. Although Gordon presented evidence of the Kelley Blue Book trade-in value for a similar car model, which was less than the repair cost, the trial court observed that Gordon had presented no evidence of the Blue Book private sale value or any other retail value. *Id.* Because there was no evidence to indicate that the retail value of the car was less than the repair estimates, *Gordon* held that the trial court had not abused its discretion "in finding the economic loss to the victim was the cost of repair and in ordering Gordon to pay $5,897 in restitution, based on the evidence before it." *Id. See also State v. Hoy*, 2021-Ohio-4098, ¶ 41 (5th Dist.) ("We note, although given the opportunity, Appellant did not present any evidence at the hearing which established the fair market value of [the victim's] car either before or after he damaged it. Accordingly, we find the trial court did not abuse its discretion in using the estimate of the cost of repairing the vehicle to ascertain economic loss.").

{¶ 20} In this case, the State was required to prove that Skinner had suffered an economic loss as a direct and proximate result of Wood's conduct and to establish the amount of restitution by a preponderance of the evidence. To that end, Skinner obtained an estimate from a body shop indicating the cost of repairing the vehicle, and the State presented that estimate as evidence of the restitution amount, which satisfied its burden.

{¶ 21} Like the offender in *Gordon*, if Wood sought to demonstrate that the cost of repairs, as set forth the State, exceeded the market value of the vehicle, Wood had the burden to demonstrate such, but she presented no evidence indicating that the market value of the car immediately before and after the accident was less than the rear end repair estimates totaling $1,865.76. "A court does not abuse its discretion in ordering restitution in the amount of a cost-to-repair estimate *if there is no evidence showing that the value of the vehicle is less than the repair cost.*" *Caldwell* at ¶ 24, citing *Gordon*. Here, as in *Gordon*, there was no evidence to indicate that the market value of the vehicle was less than the repair estimates. Because there was no evidence to indicate that rear end repair costs exceeded the difference between the market value of Skinner's vehicle immediately before and after the collision, we cannot say that the trial court abused its discretion in finding that the economic loss to Skinner was the cost of the rear end repairs and in ordering Wood to pay restitution in that amount based on the evidence before it. *See Gordon* at ¶ 7. Therefore, Wood's sole assignment of error is overruled.

### III.    Conclusion

{¶ 22} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and LEWIS, J., concur.